**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Laura Sklasky, Natalie Kenvin, and Susan Cook | ) | |
| Plaintiff | ) | |
| vs. | ) | 19-cv-3680 |
| Indigo Real Estate Services, Inc., Standard Maple Owner, LLC, and Apartment Management Consultants, LLC | ) | **JURY TRIAL DEMANDED** |
| Defendants | ) | |

**COMPLAINT**

Plaintiffs Laura Sklarsky, Natalie Kenvin, and Susan Cook, by and through their attorneys, Mary Rosenberg and Access Living of Metropolitan Chicago, file this Complaint and state as follows:

INTRODUCTION

1. Plaintiffs Laura Sklarsky, Natalie Kenvin, and Susan Cook (collectively, "Plaintiffs") all reside at Maple Pointe Apartments ("Maple Pointe"). A majority of Maple Pointe residents are low-income seniors and people with disabilities. Plaintiffs are people with disabilities.

2. In fall 2018, Defendants announced a plan to renovate all units at Maple Pointe. The renovation project, including the materials to be used, will endanger Plaintiffs' health, due to their disabilities. Accordingly, to safeguard their health, each Plaintiff requested, as a reasonable accommodation, that Defendants not renovate their units, in whole or in part. Defendants denied

this request, in violation of the federal Fair Housing Act and Section 504 of the Rehabilitation Act of 1973.

## PARTIES

3. Plaintiff Laura Sklarsky ("Ms. Sklarsky") has lived at Maple Pointe, located at 150 W. Maple, Chicago, Illinois 60610, for approximately 8 years. She has a disability.

4. Plaintiff Natalie Kenvin ("Ms. Kenvin") has lived at Maple Pointe for approximately 12 years. She has a disability.

5. Plaintiff Susan Cook ("Ms. Cook") has lived at Maple Pointe for about 11 years. She has a disability.

6. Defendant Indigo Real Estate Services, Inc. ("Indigo") was the property management company for the building during times relevant to this Complaint, through approximately March 2019. Indigo is a Washington Corporation.

7. Defendant Standard Maple Owner, LLC. ("Standard") is the owner for the building. Standard is a Delaware Corporation.

8. Upon information and belief, Defendant Apartment Management Consultants, LLC ("AMC") has been the property management company of Maple Pointe since approximately March 2019. AMC is a Utah corporation.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 42 U.S.C. § 3613(a). Plaintiffs' claims for declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 3613(c)(1).

10. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because Defendants reside there and because a substantial part of the events or omissions giving rise to Plaintiffs' claims arose there.

## STATEMENT OF FACTS

11. Maple Pointe is an over 300-unit building for low-income seniors and people with disabilities.

12. In or around November 2018, Plaintiffs became aware that Defendants planned to renovate Maple Pointe. Upon information and belief, the renovations will include the following changes to each unit: updated plumbing features, new kitchen cabinets and countertops, new bathroom vanities, new flooring, new thermostats, newly-painted walls throughout the unit, new appliances, new light fixtures, and new tub surrounds.

13. Plaintiffs also learned that when a unit is being renovated, the tenant for that unit must leave his/her apartment each day, over a five-day period, between the hours of 8 a.m. and 6 p.m.

### Laura Sklarsky

14. Plaintiff Laura Sklarsky ("Ms. Sklarsky") has lived at Maple Pointe for approximately 8 years.

15. Ms. Sklarsky has "multiple medical problems, including diabetes mellitus, paroxysmal atrial tachycardia, and multiple chemical sensitivities. She has had severe, debilitating potentially life-threatening reactions to various plastics, acrylics, dust, mold, and formaldehydes, which can be encased in the gluing agents for carpeting, plywood, pressed wood, and plastics." *See* Letter from Marilyn Pearson, M.D. to Stormie Creed (January 3, 2019), *attached as* Exhibit A. Thus, she is a person with a disability under the federal Fair Housing Act.

16. Upon information and belief, the substances and materials identified in paragraph 15 will be present, used, or a part of the contemplated renovation work in Ms. Sklarsky's unit. Ms. Sklarsky's "reactions to [these substances] have been severe and have included heart palpitations with arrhythmia, diarrhea, nausea, vomiting, dizziness, and syncope. Some of these reactions are potentially life-threatening. Ms. Sklarsky twice required hospitalizations in 2010 due to severe reactions to chemicals within the apartment where she was living at the time." Ex. A.

17. Beyond "Ms. Sklarsky's potential reactions to many of the materials that Standard Properties Company plans to use in her apartment renovation, she is not currently healthy enough to have her privacy and well-being disrupted by renovation crews in her apartment for extensive periods of time." Ex. A.

18. In addition, "even if the materials (wall paint, cabinetry, tub surrounds, new flooring, new kitchen counters) were made of natural, non-toxic substances, it would still be extremely threatening to her well-being to have packing and construction crews in and out of her apartment for any length of time." Ex. A. As a result, Dr. Pearson recommends that Ms. Sklarsky's apartment be left as is. *Id.*

19. On or around December 11, 2018, Ms. Sklarsky sent an e-mail to M'eyl Lassiter of Indigo to request that Defendants not renovate her unit, due to her disability. She followed up on her request, via email, on December 19, 2019. On January 3, 2019, Ms. Sklarsky's doctor, Dr. Marilyn Pearson, forwarded the letter attached as Exhibit A to Defendants.

20. Having received no answer to her reasonable accommodation request, Ms. Sklarsky contacted Access Living of Metropolitan Chicago for assistance. Ms. Sklarsky, through her counsel, sent a letter to Defendants to request that Defendants not renovate her unit as a

reasonable accommodation under the Fair Housing Act ("FHA" or the "Act") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). *See* Letter from Mary Rosenberg to Cary Schiff and Robert Koerner (January 24, 2019), *attached as* Exhibit B.

21. On February 8, 2019, attorney Cary Schiff, on behalf of Defendants, denied Ms. Sklarsky's request. He stated that to forego renovation of Ms. Sklarsky's unit would constitute an undue burden and "would fundamentally alter the ongoing renovation project at [Maple Pointe]." *See* Letter from Cary Schiff to Mary Rosenberg (February 8, 2019), *attached as* Exhibit C. Instead of granting Ms. Sklarsky's request that her unit not be renovated, Defendants proposed that Ms. Sklarsky move to a unit that had already been renovated. *Id.*

22. Moving to an already-renovated unit will not accommodate Ms. Sklarsky because such a unit will contain the materials Ms. Sklarsky needs to avoid. In addition, due to her other health issues, the move itself would be a major threat to her well-being.

23. Accordingly, Ms. Sklarsky, through counsel, responded that although she would not agree to move to an already-renovated unit because such would not accommodate her needs, she was and is willing to work with the building to allow limited changes to her unit, provided those changes do not threaten her health. *See* Letter from Mary Rosenberg to Cary Schiff (February 13, 2019), *attached as* Exhibit D.

24. For example, one of the first projects the contractor plans in each unit is to replace the shower valve in the bathroom. In her letter of February 13, 2019, Ms. Sklarsky's counsel affirmed Ms. Sklarsky's willingness to allow replacement of the shower valve, and requested more details about this part of the renovation project. Ex. D.

25. In response, Defendants stated that "as a part of the shower valve replacement, a new tub surround will be placed in the bathroom. The new tub surround to be installed in the

bathroom is designed to reduce the presence of allergens and mold in the bathroom. The tub surround includes new grab bars and is compliant with the ADA. Maple Pointe has chosen materials and building supplies that will make the bathroom safer, easier to clean, and less likely to allow mold and mildew growth." *See* Letter from Cary Schiff to Mary Rosenberg (February 25, 2019), *attached as* Exhibit E.

26. In or around February 2019, Ms. Sklarsky visited a recently-renovated unit in Maple Pointe. Within minutes, Ms. Sklarsky was dizzy and nauseous due to the chemicals in the unit.

27. On March 20, 2019, Defendants sent a second letter regarding Ms. Sklarsky to her counsel. In it, Defendants again offered to relocate Ms. Sklarsky to an already-renovated unit. *See* Letter from Cary Schiff to Mary Rosenberg (March 20, 2019), *attached as* Exhibit F. Defendants also offered to conduct a "professional air quality investigation" once Ms. Sklarsky's unit is renovated. *Id.* The investigation would test "the presence of volatile organic compounds." *Id.*

28. An air quality investigation would not accommodate Ms. Sklarsky. First, the reliability of such an investigation is in dispute. Second, even if the test were accurate, it would not accommodate Ms. Sklarsky. If Ms. Sklarsky's unit were renovated and the test revealed a significant air quality problem, she would not be able to move back into the unit without risking serious health complications. Likewise, if the test were to reveal minimal air quality concerns, Ms. Sklarsky might still experience respiratory and other health problems upon moving back into the unit, but at that point would have no recourse.

29. On March 26, 2019, in yet another attempt to reach a compromise, Ms. Sklarsky proposed that the parties meet to discuss the scope of the renovation and which materials

Defendants intended to use, and to see if the parties could find a compromise to allow the construction without jeopardizing Ms. Sklarsky's health. *See* Letter from Mary Rosenberg to Cary Schiff (March 26, 2019), *attached as* Exhibit G.

30. On or about April 4, 2019, Ms. Sklarsky received a letter under her door that stated Defendants intended to start renovating her unit within the next few weeks.

31. Shortly thereafter, counsel for Ms. Sklarsky e-mailed counsel for Defendants to ask if their letter of April 4, 2019 meant Defendants were refusing to meet with Ms. Sklarsky.

32. That same day, counsel for Defendants replied that communication between the parties should be only in writing. Thus, presumably, Defendants refused to meet in person to discuss Ms. Sklarsky's accommodation request.

33. In response, counsel for Ms. Sklarsky again requested that Defendants provide in writing (1) what renovation projects they intended to complete in each unit, and (2) what materials they intended to use for those projects.

34. As of the filing of this Complaint, Defendants have failed to either (1) agree to grant Ms. Sklarsky's request that Defendants not renovate her apartment, or (2) discuss what projects and materials the renovation entails. Moreover, Defendants have asserted in their communications that they reserve the right to evict Ms. Sklarsky should she not agree to the proposed renovations.

Natalie Kenvin

35. Plaintiff Natalie Kenvin ("Ms. Kenvin") has lived at Maple Pointe for approximately 12 years.

36. Ms. Kenvin has black lung disease and "severe allergies to molds, pesticides, exhaust fumes, multiple chemical sensitivities, and dust." *See* Letter from Dr. Chris Costas

(January 10, 2019), *attached as* Exhibit H. Thus, she is a person with a disability under the federal Fair Housing Act. In the past "hotel room stays have resulted in hospitalizations" from "cleaning products used in the hotel and/or other chemicals in the environment." *Id.*

37. Renovation of Ms. Kenvin's unit could prove life-threatening. During the remodel, "exposure to many materials present during construction are likely to trigger hospitalization." Ex. H. As a result, Ms. Kenvin needs to avoid renovation of her unit.

38. On or around January 10, 2019, Ms. Kenvin sent a letter from her doctor to Defendants' staff to ask that they not renovate her unit. Ex. H.

39. Around the same time, Ms. Kenvin's case worker from Council for Jewish Elderly spoke to Defendants about the renovation. The caseworker was told that the building would renovate the unit irrespective of Ms. Kenvin's disability.

40. Having received no response to her doctor's letter, Ms. Kenvin contacted Access Living of Metropolitan Chicago for assistance. Ms. Kenvin, through her counsel, sent a letter to Defendants to request that Defendants not renovate her unit, as a reasonable accommodation under the Fair Housing Act ("FHA" or the "Act") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). *See* Letter from Mary Rosenberg to Cary Schiff and Robert Koerner (February 18, 2019), *attached as* Exhibit I.

41. On March 20, 2019, Defendants' counsel offered to Ms. Kenvin the same two "alternate accommodations" they had offered Ms. Sklarsky: (1) moving to an already-renovated unit, and (2) providing an air-quality test once renovations to her unit are completed. *See* Letter from Cary Schiff to Mary Rosenberg (March 20, 2019), *attached as* Exhibit J.

42. Moving to an already-renovated unit will not accommodate Ms. Kenvin because such a unit will contain the materials Ms. Kenvin needs to avoid. In addition, due to her other

health issues, the move itself would be a major threat to her well-being. Likewise, the air quality test is problematic to Ms. Kenvin in the same manner it is to Ms. Sklarsky.

43. On March 22, 2019, in an effort to the resolve the issue, counsel for Ms. Kenvin suggested that the parties meet to discuss the project and Ms. Kenvin's disability-related needs. *See* Letter from Mary Rosenberg to Cary Schiff and Robert Koerner (March 22, 2019), *attached as* Exhibit K.

44. In April 2019, Ms. Kenvin received a letter under her door that stated Defendants intended to start renovating her unit within the next few weeks.

45. Defendants are unwilling to meet and discuss Ms. Kenvin's needs.

46. As of the filing of this Complaint, Defendants have failed to either (1) agree to grant Ms. Kenvin's request that Defendants not renovate her apartment, or (2) discuss what projects and materials the renovation entails. Moreover, Defendants have asserted in their communications that they reserve the right to evict Ms. Kenvin should she not agree to the proposed renovations.

Susan Cook

47. Plaintiff Susan Cook ("Ms. Cook") has lived at Maple Pointe for approximately 11 years.

48. Ms. Cook has paralysis on the upper left side of her body because of spinal disease. She also has "multiple chronic conditions which make her sensitive to her living environment." Letter from Laura A. Khan (December 13, 2018), *attached as* Exhibit L. In particular, she "should not be exposed to environmental construction dust, adhesives, plastics,

vinyl, acrylic, or other chemical agents . . . [S]he requires assistive devices, specifically assist poles[1], which should be left in her place of residence. Her shower should be left as is." *Id.*

49. After Ms. Cook learned about the renovation project at Maple Pointe, she contacted Defendants via e-mail regarding her concerns. In particular, on December 18, 2018, she expressed concerns that the new tub surround would be slick and dangerous, particularly because the grab bars that currently exist in the tub area will be removed when the new tub surround is installed. *See* Email from Susan Cook to Stormie Creed (December 18, 2018), *attached as* Exhibit M.

50. Shortly thereafter, Ms. Cook contacted her alderman to express her concerns regarding the renovation at Maple Pointe.

51. As a result of advocacy with her alderman, on January 18, 2019, Alderman Burnett and Robert Koerner of Defendant Standard Properties visited Ms. Cook at her unit to discuss her concerns. During that meeting, Mr. Koerner verbally agreed not to renovate Ms. Cook's bathroom because of her disability-related needs.

52. In or around February 2019, Ms. Cook visited a recently-renovated unit in Maple Pointe. Within minutes, Ms. Cook was wheezing and coughing.

53. In or around late February 2019, Ms. Cook got a renovation specification sheet from another Maple Pointe tenant. The document indicated the type of tile to be used in the renovation is a style called Uncommon Ground, from a company named Shaw. Shortly thereafter, Ms. Cook requested a sample of the tile from Shaw. While examining the tile, Ms. Cook developed a rash on her arms.

[1] By "assistance poles" Dr. Kahn likely means grab bars, commonly found in the bathroom near the bathtub or toilet.

54. On April 2, 2019, Ms. Cook received a letter under her door that stated Defendants intended to start renovating her unit within the next few weeks - the same letter both Ms. Sklarsky and Ms. Ms. Kenvin had received. Ms. Cook was surprised to receive this letter, because Mr. Koerner had previously agreed not to renovate her bathroom. Accordingly, Ms. Cook sent an email to Mr. Koerner to state that he had already agreed to skip her bathroom during the renovation.

55. Mr. Koerner responded that he did indeed agree to skip her bathroom during the renovation process. *See* Email from Robert Koerner to Susan Cook (April 5, 2019), *attached as* Exhibit N.

56. The next day, Jennifer Aloisio, employee of Standard, visited Ms. Cook's unit and discussed Ms. Cook’s other needs during the renovation. Ms. Aloisio told Ms. Cook to summarize her needs in a letter and forward it to her.

57. As Ms. Cook was preparing this letter, she received another letter from Ms. Aloisio, which stated Standard would not renovate her bathroom. *See* Letter from Jennifer Aloisio to Susan Cook (April 16, 2019), *attached as* Exhibit O. However, Ms. Aloisio also wrote that her letter “confirms [Ms. Cook’s] acceptance of all other in unit renovation work with the agreement that [Standard] will accommodate [Ms. Cook] with a guest suite during the entirety of the renovation work.” Ex. O.

58. Ms. Cook, through her counsel, contacted Defendants’ counsel to explain that Ms. Cook did not consent to other renovations in her unit. *See* Letter from Mary Rosenberg to Cary Schiff (April 22, 2019), *attached as* Exhibit P. Rather, she explained Ms. Cook had already spoken to Ms. Aloisio regarding some of the projects proposed for the rest of the unit. *Id.* She

then expressed her needs regarding carpeting and paint in her unit, and requested more details regarding the scope of the rest of the project. *Id.*

59. As of the filing of this Complaint, Ms. Cook has not received a response to this letter.

DISCRIMINATION UNDER THE FEDERAL FAIR HOUSING ACT

COUNT I: FAILURE TO PROVIDE A REASONABLE ACCOMMODATION UNDER THE FEDERAL FAIR HOUSING ACT

60. Plaintiffs re-allege and incorporate the preceding paragraphs of the Complaint as if fully set forth herein.

61. The federal Fair Housing Act ("FHA") prohibits discrimination in housing on the basis of disability. Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

62. Moreover, under the FHA,

> [w]hen a housing provider refuses a requested accommodation because it is not reasonable, the provider should discuss with the requester whether there is an alternative accommodation that would effectively address the requester's disability-related needs without a fundamental alteration to the provider's operations and without imposing an undue financial and administrative burden. If an alternative accommodation would effectively meet the requester's disability-related needs and is reasonable, the provider must grant it. An interactive process in which the housing provider and the requester discuss the requester's disability-related need for the requested accommodation and possible alternative accommodations is helpful to all concerned because it often results in an effective accommodation for the requester that does not pose an undue financial and administrative burden for the provider.

*Joint Statement of the Department of Housing and Urban Development and the Department of Justice – Reasonable Accommodations Under the Fair Housing Act, Washington, D.C.* (Hereinafter "*Joint Statement")*(March 17, 2004), pp. 7-8 (Question 7), *available at:*

http://www.hud.gov/offices/fheo/library/huddojstatement.pdf. When a provider suggests an alternative accommodation, "providers should be aware that persons with disabilities typically have the most accurate knowledge about the functional limitations posed by their disability, and an individual is not obligated to accept an alternative accommodation suggested by the provider if she believes it will not meet her needs and her preferred accommodation is reasonable." *Id.*

63. Ms. Sklarsky, Ms. Kenvin, and Ms. Cook are people with disabilities covered by the FHA. Defendants must comply with the FHA.

64. While Defendants did suggest alternative accommodations for Ms. Sklarsky and Ms. Kenvin, none would accommodate their disability-related needs.

65. The Plaintiffs are willing to cooperate with Defendants so renovations can occur in a manner that does not compromise their well-being. To that end, they each requested more information to engage in the interactive process with Defendants and determine which renovations could be accomplished without risk to their health.

66. Defendants failed to provide any details about the planned renovations, including what materials would be used in the unit.

67. Defendants discriminated against Ms. Sklarsky and Ms. Kenvin when they failed to allow their units to be skipped during the renovation of Maple Pointe.

68. Defendants agreed to skip Ms. Cook's bathroom, but did not engage in a good faith interactive process with her regarding other renovations to the apartment. Defendants discriminated against Ms. Cook when they failed to accommodate her other disability-related needs in the renovation.

69. Defendants' actions caused damage to Plaintiffs. The Plaintiffs live in constant fear of their units being renovated without their consent. Because of Defendants' refusal to grant

their requests, Plaintiffs face potentially life-threatening damage to their health. Moreover, should Defendants proceed with the renovations without accommodating Plaintiffs, Plaintiffs risk becoming homeless because their units may become unavailable to them. Finally, by requesting accommodations related to the renovation work, Plaintiffs face retaliatory action from Defendants, including eviction.

70. Defendants acted intentionally, willfully, and/or in reckless disregard for Plaintiffs' rights.

## COUNT II: FAILURE TO PROVIDE A REASONABLE MODIFICATION UNDER SECTION 504

71. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

72. Section 504 states that "[n]o . . . qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).

73. Plaintiffs' building is federally-subsidized housing, and therefore Defendants must comply with Section 504. 29 U.S.C. § 794(b)(3)(A)(ii)(Section 504 applies to corporations, partnerships, or private organizations that are "principally engaged in the business of providing . . . housing . . .").

74. Section 504 requires recipients of federal funds to provide reasonable modifications for people with disabilities. 24 C.F.R. § 8.33. A reasonable modification is "a change, modification, alteration, or adaptation in policy, procedure, practice, program, or facility that provides a qualified individual with a disability the opportunity to participate in, or benefit from, a program or activity." *See* HUD, People with Disabilities – Section 504: Frequently

Asked Questions, *available at*:

http://portal.hud.gov/hudportal/HUD?src=/program_offices/fair_housing_equal_opp/disabilities/sect504faq.

75. Ms. Sklarsky, Ms. Kenvin, and Ms. Cook are people with disabilities covered by Section 504.

76. Defendants violated Section 504 when they failed to allow Ms. Sklarsky's and Ms. Cook's units to be skipped during the renovation of Maple Pointe

77. Defendants violated Section 504 when they failed to provide further details regarding the projects intended for each unit.

78. Defendants violated Section 504 when they failed to adapt the projects intended for Plaintiffs' units to safeguard the health of the Plaintiffs.

79. Defendants' actions caused damage to Plaintiffs. The Plaintiffs live in constant fear of their units being renovated without their consent. Because of Defendants' refusal to grant their requests, Plaintiffs face potentially life-threatening damage to their health. Moreover, should Defendants proceed with the renovation without accommodating Plaintiffs risk becoming homeless because their units may become unavailable to them. Finally, by requesting accommodations related to the renovation work, Plaintiffs face retaliatory action from Defendants, including eviction.

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that Defendants' acts constitute discrimination under the Fair Housing Act and Section 504;

B. Order Defendants not renovate Ms. Sklarsky's unit and Ms. Kenvin's unit;

C. Order Defendants to accommodate Ms. Cook in their selection of projects and materials in her unit;

D. Award Plaintiffs actual damages, including pain and suffering resulting from Defendants' illegal discrimination;

E. Award Plaintiffs punitive damages as a result of Defendants' willful, malicious, or reckless conduct;

F. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(2);

G. Order Defendants to attend Fair Housing training and disability awareness training at Defendants' expense;

H. Order Defendants to create a policy on reasonable accommodations and reasonable modifications; and

I. Grant any other relief this court deems appropriate.

DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury.

June 3, 2019

Respectfully Submitted,

_/s/ Mary Rosenberg___________
One of the Attorneys for Plaintiff

Mary Rosenberg
Kenneth M. Walden
Charles Petrof
Access Living of Metropolitan Chicago
115 W. Chicago
Chicago, Illinois 60654

mrosenberg@accessliving.org
Phone: (312)640-2155
Fax: (312) 640-2101